[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 11907
The plaintiff, Ann Fields of South Windsor, Inc. (Ann Fields), has brought this four count complaint against Vincent Prestileo (Prestileo), an insurance agent, and Underwriters at Lloyd's of London (Lloyd's) an insurance company. In its first count, which alleges breach of contract against Lloyd's, the plaintiff asserts that it purchased a business insurance policy, sustained a loss, made a claim to recover under the provisions of its policy, and that its claim was wrongfully denied. The second count alleges breach of an oral contract against Prestileo. The third count alleges negligence against Prestileo, claiming that Prestileo, acting as the plaintiffs agent, failed to secure a policy of insurance adequate to cover its loss. In the fourth count, the plaintiff also makes a claim against Prestileo for violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a, et seq. In response, Prestileo has entered general denials and asserted, as a special defense, that the plaintiffs claim is barred by the Statute of Limitations found in General Statutes § 52-584. Lloyd's, too filed general denials and special defenses. Among the latter is Lloyd's claim that the plaintiffs claim is "subject to all . . . limitations, term, conditions, provisions, exclusions, definitions and endorsements of the subject policy . . ." (Lloyd's Seventh Special Defense.) Based on the trial evidence, the court makes the following findings and order.
 I. Facts
In 1982, Michael Tartsinis of Somers purchased property at Sullivan Avenue in South Windsor. Subsequently, Michael Tartsinis constructed a seven store mall on the property which became known as Ann's Plaza and included a restaurant facility. While he initially operated the restaurant under the name Ann Fields, he leased the property for a period to individuals who operated it under other names until a time when he resumed operation of the restaurant. As of 1994, Michael Tartsinis was in possession of the restaurant facility that contained restaurant equipment and furnishings purchased and owned by Ann Fields. Ann Fields of South Windsor is a Connecticut corporation authorized to conduct CT Page 11908 business in Connecticut. All of its stock is presently owned by Michael Tartsinis.
On November 23, 1994, Ann Fields entered into written agreements with GCM, Inc. (GCM), for the sale of the restaurant machinery, equipment, fixtures, furniture, inventory, customer and supplier lists and marketing materials, and to lease the restaurant building to GCM. The sale price for the inventory, lists, fixtures, equipment and furnishings was $135,000. The agreement required GCM to make an initial payment of $5,000, a payment of $20,000 within six months, and the balance in monthly payments of principal and interest of $1,717.97 with the entire amount due within ten years.
The parties closed this sale on January 25, 1995. As part of this transaction, GCM executed a security agreement giving Ann Fields a security interest in certain collateral, which the agreement defined as the scheduled property consisting of the restaurant equipment and furnishings, any property of the same class as those subsequently purchased by the debtor during the term of the agreement, proceeds of the collateral, and any increases, substitutions, replacements, additions, and accessions thereto. Plaintiffs Exhibit 5. The intent of this agreement was to secure GCM's payment of the balance of the purchase price to Ann Fields pursuant to its obligation under the sales agreement. Also, at this closing, Ann Fields signed a bill of sale in the amount of $80,000, representing the sales price of the scheduled equipment and furnishings. Appended to the security agreement was a list of the items purchased from Ann Fields by GCM. The security agreement included a provision requiring GCM to, "keep the collateral insured for the benefit of [Ann Fields] against loss by fire and other casualties or risks in such form and amount, with such companies, as may be required by Secured Party." Plaintiffs Exhibit 5. The agreement further provided, "Debtor agrees to deliver the insurance policies to Secured Party upon request, and authorizes Secured Party to make or compromise any claim thereunder. Debtor hereby appoints the Secured Part the attorney for the Debtor in obtaining, adjusting and cancelling any such insurance and endorsing settlement drafts and hereby assign to the Secured Party all sums which may become payable under such insurance, including return premiums and dividends, as additional security for the indebtedness. Debtor shall give immediate written notice to the Secured Party and to insurers of loss or damage to the Collateral and shall promptly file proofs of loss with insurers." The security agreement also entitled Ann Fields to purchase insurance if GCM failed to comply with its CT Page 11909 insurance obligation, and to charge GCM with the purchase cost plus interest. Finally, this agreement provided that GCM should not permit the collateral to be removed from the restaurant without Ann Field's permission, and it granted Ann Fields the right to enter into the restaurant to inspect the collateral.
For several months after the closing, GCM operated the restaurant and timely made all monthly payments to Ann Fields. Michael Tartsinis frequented the shopping mall, visiting the restaurant two to three times a week. During these visits, he noted that the equipment he had sold to GCM was in use and apparent good order.
In 1996, Michael Tartsinis was notified by GCM's insurance company that the policy of insurance taken by GCM on the restaurant property had been canceled. After he called GCM's insurance carrier to confirm the cancellation, he informed GCM of his intention to exercise his rights under their agreement to purchase insurance and to charge GCM for it. Thereafter, he instructed his adult son, Philip Tartsinis, to obtain an insurance policy from the Burgess Insurance Agency (Burgess). In so doing, Phillip Tartsinis was acting on his father's behalf in his father's capacity as record owner of the property and as a principle of Ann Fields. At the time, Michael Tartsinis had an ongoing business relationship with Burgess through which he had obtained premises and liability insurance for the shopping mall. In placing insurance with Burgess, Michael Tartsinis relied on the business judgment and expertise of Prestileo to obtain insurance consistent with his stated needs.
When Michael Tartsinis sent his son to speak with Prestileo, GCM was current on its obligations, and he did not have in his mind a fear that GCM might remove any items of equipment or furnishings from the building. During the period of GCM's tenancy, he had enjoyed a good relationship with GCM personnel.
Phillip Tartsinis gave Prestileo a copy of the security agreement, lease, bill of sale, asset inventory and the UCC-1 and explained that, since GCM had failed to maintain insurance in accordance with the terms of the security agreement, he wished to purchase substitute insurance. He also informed Prestileo that cost was no obstacle since GCM would be responsible for it. While Phillip Tartsinis told Prestileo that he wanted insurance to cover any losses, he did not explicitly request insurance to cover the possibility that GCM might remove the furnishings and equipment from the restaurant. In this regard, the court is CT Page 11910 mindful that the evidence on this issue is disputed. The court credits Prestileo's testimony that he was not asked to obtain a policy to insure against a loss occasioned by GCM's removal of the items.
Following his conversation with Phillip Tartsinis, Prestileo attempted to place insurance and was initially unsuccessful. When he reported to Phillip Tartsinis that he could obtain a policy which did not include a theft provision, Phillip Tartsinis informed him that he wished to have theft covered. Thereafter, Prestileo forwarded an insurance application to Continental Agency of Connecticut, Inc., which acts as an insurance broker for several insurance carriers, including Lloyd's. He also spoke with Chester Blake, a Continental representative. In this conversation, Prestileo told Blake that he was seeking coverage for Ann Fields' secured interest in personal property at the restaurant location. Blake thereafter placed the insurance with Lloyd's. Blake later called Prestileo and informed him that he had obtained contents coverage with a special perils policy. Thereafter, Prestileo received an insurance policy which he believed contained the desired coverages.
The declaration page of the policy states its effective date as April 1, 1996 and indicates coverage of $100,000 for business personal property. Plaintiffs Exhibit 9. The first annual premium for the policy was $1,234.60, an amount billed to and paid for by Michael Tartsinis. In pertinent part, the policy provided for coverage for direct physical loss of or damage to the covered property, and the term "covered property" included business personal property. While the policy holder was identified as Ann Fields and the coverage extended to property owned by the policy holder, the court finds that under the circumstances of the security agreement between Ann Fields and GCM, that Ann Fields was permissibly identified as the property owner for purposes of coverage.
The policy included a number of exclusions and limitations. Notably, in the section of the policy entitled, Causes of Loss-Special Form, the policy provides that covered causes of loss means risks of direct physical loss unless excluded under Section B of the Special Form. Section B(2)h provides, in pertinent part, "[w]e will not pay for loss or damage caused by or resulting from . . . [d]ishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom youentrust the property for any purpose: (1) acting alone or in CT Page 11911 collusion with others; or (2) whether or not occurring during the hours of employment." (Emphasis added.) Plaintiffs Exhibit 9. Hereinafter, this shall be referred to as the entrustment exclusion. Additionally, Special Form Section C(1)e and g limit the policy by stating, "we will not pay for any loss that is a consequence of loss or damage as described and limited in this section. . . . [including] e. [p]roperty that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. . . . [and] g. [p]roperty that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions."
On the Monday following Easter of 1996, during the term of the policy, Michael Tartsinis visited the restaurant and noted that most of the equipment and furnishings were gone. Additionally, as GCM's principal operator was departing, she handed the restaurant keys to Michael Tartsinis. He noted at the time that there were no signs of forcible entry. While the court heard evidence that Michael Tartsinis reported the incident to the police and to Prestileo that the restaurant furnishings and equipment were missing, along with his belief that the items had been taken by GCM personnel, the trial was devoid of any credible evidence to explain the reason for the absence of the items from the restaurant. There is, therefore, no physical evidence to show what happened to the property. Additionally, there is insufficient evidence for the court to infer that the equipment and furnishings were removed by GCM.
Michael Tartsinis filed a claim with Prestileo under his policy asserting that "tenants closed restaurant and stole many items." Plaintiffs Exhibit 11. The claim was accompanied by the Ann Field's Inventory List, upon which the allegedly stolen items were circled. After investigation, Lloyd's denied the claim, citing the aforementioned entrustment exclusion. Plaintiffs Exhibit 12. This litigation ensued.
 II. Count One
The first count of the plaintiffs Second Amended Complaint (#126) alleges breach of contract against Lloyd's. The plaintiff alleges that the policy was effective upon the date of the alleged loss, April 7, 1996, that the plaintiffs security interest in the property constituted personal property of the plaintiff and, as such, was covered by the business insurance CT Page 11912 policy. The first count further alleges that the property covered by the security interest was stolen or fraudulently disposed of by the holders, which constitutes a covered loss within the meaning of the subject policy. Finally, the first count alleges that Lloyd's denial of this claim constitutes a breach of the insurance contract.
"[I]t has become the established law of this State that one instituting an action upon an insurance policy is obliged to allege in his complaint, in general terms, that the various conditions precedent stated in the policy have been fulfilled; that it is then incumbent upon the defendant, by way of special defense, to set up such failures to comply with such conditions as it proposes to claim; that the burden rests upon the plaintiff to prove compliance with the conditions so put in issue, but that, as to other conditions precedent, compliance is presumed, without offer of proof by the plaintiff. . . ." (Internal quotation marks omitted.) Young v. American Fidelity InsuranceCo., 2 Conn. App. 282, 285, 479 A.2d 244 (1984).
While it is true that a defendant insurance carrier must plead as a special defense any claim that the plaintiff insured failed to comply with a certain condition precedent to coverage, in the instant case, Lloyd's does not claim that the plaintiff failed to comply with a condition precedent to coverage. Rather, Lloyd's claims that certain exclusions specified in the policy apply such that this particular loss is not covered by the policy.
"[T]he burden of proving an exception to a risk is on the insurer." Id., 286. "The object of an exception is to exclude that which would otherwise be included, to take special cases out of a general class. . . . By "exception" of course is meant exclusion of one or more of the risks otherwise generally insured against. . . ." (Citation omitted; internal quotation marks omitted.) Id. By pleading its Seventh Special Defense, Lloyd's has put in issue all of the policy exclusions and limitations and, in doing so, assumed the burden of proving applicability of at least one exclusion in order to justify its denial of coverage.
While Lloyd's denied coverage on the basis of the entrustment provision, the court need not decide the applicability of this exclusion since coverage is precluded by the terms of another limitation within the scope of Lloyd's special defense. For the court, the question is not whether coverage was initially denied CT Page 11913 for the right reason, but rather whether Lloyd's has alleged and proven a proper basis for excluding coverage. It has.
The court finds that the applicability of the policy limitation found in Section C(1)e has been proven by Lloyd's and provides a convincing ground for denial of coverage. The limitation is descriptive of the underlying facts as proven in this case. This limitation provides that Lloyd's will not pay for any loss involving "[p]roperty that is missing where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property." The court finds that the plaintiff has proven that certain secured property was missing. The only evidence of property generally missing is the testimony of Michael Tartsinis and circled items on the Ann Fields Inventory List, which was attached to the property loss notice. Plaintiffs Exhibit 11. The court heard no credible evidence to explain the reasons for the apparent disappearance of the property. There was no sign of forced entry and, although the police were called to the restaurant, they did not launch an investigation. The plaintiffs claims of theft and/or fraudulent disposition are not supported by sufficient evidence. While Michael Tartsinis speculated to Prestileo that the property had been taken by GCM, his suppositions alone are not a sufficient basis for the court to conclude that the property was taken by GCM. The court concludes that the claimed items of equipment and furnishings are missing for reasons unexplained at trial.
Accordingly, for the foregoing reasons, judgment shall enter in favor of the defendant, Lloyd's, on the first count.
 III. Counts Two, Three and Four
Counts two, three and four of the plaintiffs Second Amended Complaint allege, respectively, the breach of an oral contract, negligence and a violation of CUTPA, all by Prestileo.
As previously found by the court, Phillip Tartsinis told Prestileo that he sought insurance to cover any losses, but he did not specifically request coverage against the possibility that GCM might remove the secured property from the premises. The court credits Prestileo's testimony in this regard, that he was asked to obtain insurance to cover any loss and that he did procure such a policy. The court also credits Prestileo's testimony that, if the plaintiff had requested a policy to cover the eventuality of GCM removing the property, he would not have CT Page 11914 provided it.
The evidence indicates that Michael Tartsinis visited the restaurant often and noted that the equipment covered by the security agreement was in good working order. At the time that Phillip Tartsinis met with Prestileo for the purpose of obtaining insurance, GCM was current on its obligations to GCM. The court finds that, at this point, there was no fear in the plaintiffs mind that GCM might remove the secured property from the premises in violation of the security agreement. The fact that Phillip Tartsinis sought to insure the secured goods is not evidence of any such fear. It is simply evidence that he was exercising the right under the security agreement to insure the secured property if GCM failed to do so directly.
The court finds that Prestileo obtained the insurance sought by Phillip Tartsinis. Phillip Tartsinis did not ask for the coverage the plaintiff now seeks. There is no evidence to support the claim that Prestileo breached an oral contract with the plaintiff. Likewise, there is insufficient evidence to support the claim that Prestileo did not act according to the professional standard of care applicable to insurance agents. Finally, since professional negligence claims "directed at the competence of and strategy employed by the . . . [defendant]" are not sufficient to support a CUTPA claim, there remains no ground of support for the plaintiffs claim of a CUTPA violation. Haynesv. Yale — New Haven Hospital, 243 Conn. 17,35-36, 699 A.2d 964 (1997).
Accordingly, for the foregoing reasons, the court finds that Prestileo did not breach any oral contract, did not act negligently and did not violate CUTPA. Judgment shall enter in favor of the defendant, Vincent Prestileo, d/b/a Burgess Insurance Agency, on the second, third and fourth counts.
 IV. Conclusion
Judgment may enter in favor of the defendant, Underwriters at Lloyd's, London, on the first count. Judgment may enter in favor of the defendant, Vincent Prestileo d/b/a Burgess Insurance Agency, on the second, third and fourth counts.
It is so ordered.
BY THE COURT: CT Page 11915
Bishop, J.